IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARGARET GARNER, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CV32 |
| | ) | |
| v. | ) | |
| | ) | |
| 3M, Corporation, | ) | MEMORANDUM AND ORDER ON THE |
| | ) | DEFENDANT'S MOTION FOR |
| Defendant. | ) | SUMMARY JUDGMENT |
| | ) | |

On or about December 21, 2007, the plaintiff, Margaret Garner, filed a complaint against the defendant, 3M Corporation, in the District Court of Douglas County, Nebraska. (See filing 1, Attach. 1.) The complaint alleges that the defendant wrongfully denied the plaintiff leave under the Family and Medical Leave Act of 1993 (FMLA), 107 Stat. 6, 29 U.S.C. §§ 2601 et seq., and "attempted to force [the] plaintiff into retirement in retaliation for taking FMLA leave on or about October 1, 2007." (Id. ¶ 5.) The defendant removed the action to this court, (see filing 1), and filed motion for summary judgment, (see filing 14). For the following reasons, I find that the defendant's motion must be granted.

I. BACKGROUND

The following facts are taken mainly from the defendant's statement of material facts. (See filing 16 at 2-10.) I note in passing that the plaintiff did not file her response to the defendant's motion for summary judgment in good time. (See filings 14 & 16 (defendant's motion for summary judgment and supporting brief filed on September 3, 2008); filing 18 (plaintiff's response brief filed on September 29, 2008)); NECivR 7.1(b)(1)(B) (providing that a brief opposing a motion for summary judgment must be filed and served no later than twenty calendar days after the motion and supporting brief are filed and served); NECivR 6.1(b) (providing that the three-day mailing rule set forth in Federal Rule of Civil Procedure 6(e) [sic] applies when service is accomplished by electronic filing). Moreover, the plaintiff's untimely

1

brief does not include a response addressing each numbered paragraph in the defendant's statement of facts. (See filing 18 at 1); NECivR 56.1(b)(1). Nevertheless, I have considered those portions of the plaintiff's statement of facts that are properly referenced and are supported by the evidentiary materials on file.

The defendant operates a manufacturing facility in Valley, Nebraska. (Filing 16, Def.'s Statement of Facts (Def.'s Facts) ¶ 1.) The plaintiff worked as a production employee in the Valley facility from 1996 until her termination in 2007. (Id. ¶¶ 18, 35-36.)

At all relevant times, the defendant maintained an "Attendance Control Program" for production, maintenance, and warehouse employees working in the Valley facility. (Def.'s Facts ¶ 1.) "Under the Attendance Control Program, employees are charged points for certain types of absences" from work. (Id. ¶ 2.) If an employee is absent due to illness, the absence is "chargeable" unless it is covered by the defendant's FMLA policy. (Id. ¶ 4.) For example, if an employee is absent for a full day due to illness, and if the absence is not covered by the FMLA policy, the employee is charged 1 point. (Id. ¶ 7.) If, however, the employee's illness causes him to be absent for a second day–or any number of consecutive days–the employee is charged a total of 0.5 additional points. (Id.) In other words, "a two-day absence, a three-day absence, and a twelve-day absence would all [result in a total charge of] 1.5 points," assuming that the absences are chargeable (e.g., they are absences due to illness that are not covered by the FMLA policy). (Id.) The points accumulate during a rolling twelve-month period dating back from the date of the most recent absence, (id. ¶ 8), and the accumulation of points leads to progressive stages of discipline: "Step One occurs at 3 points and results in verbal warning; Step Two occurs at 4 points and results in a written warning; Step Three occurs at 5 points and results in a final warning and one-day suspension; and Step Four, which occurs at 6 or more points, results in a review for termination," (id. ¶ 9).

Employees who have worked 1250 hours during the preceding twelve months are eligible for FMLA leave. (Def.'s Facts ¶ 12.) A third-party administrator, Sedgwick Claims Management Services, Inc. (Sedgwick), is responsible for approving or denying all claims for FMLA leave. (Id. ¶ 13.) To obtain FMLA leave, employees contact Sedgwick telephonically and make a request. (Id. ¶ 14.) Typically, requests are given "conditional approval," and

requesting employees are notified that final determinations will be made sometime later. (Id. ¶ 15.) As noted above, if an employee is approved for FMLA leave, absences will not be charged under the Attendance Control Program. (Id. ¶ 17.)

In 2006, the plaintiff suffered from medical problems and was placed on long-term disability leave. (Def.'s Facts ¶¶ 19-20.) She returned to work at the end of 2006, and although she had been given work restrictions, those restrictions were accommodated by the defendant. (Id. at 21.)

The plaintiff was absent from work from March 8, 2007, to March 12, 2007, "for personal health reasons." (Def.'s Facts ¶ 22.) Due to her failure to work the requisite number of hours during the preceding twelve months, she was not eligible for FMLA leave. (Id.) Her absences resulted in a 1.5-point charge under the Attendance Control Program. (Id.)

The plaintiff was also absent from work from March 23, 2007, to June 11, 2007, and from August 20, 2007, to August 23, 2007. (Def.'s Facts ¶ 23.) The plaintiff applied for FMLA leave for each of these sets of absences, but her requests were denied on the ground that she had not worked the requisite number of hours for eligibility under the FMLA policy. (Id.) As a result, she incurred a 3-point charge under the Attendance Control Program (1.5 points for each period of absence), which raised her rolling point total to 4.5. (Id.) The defendant warned the plaintiff orally and in writing that charges of additional points could lead to discipline, including termination. (Id.) The plaintiff understood that her absences from work were affecting her ability to qualify for FMLA leave. (Id. at 24.)

On September 6, 2007, the plaintiff requested FMLA leave for September 5-12, 2007. (Def.'s Facts ¶ 28.) Then on September 14, 2007, she requested FMLA leave for September 19-21, 2007. (Id.)[1] At the time of these requests, the plaintiff had worked fewer than 650 hours during the preceding twelve months. (Id. ¶ 29.) Therefore, she did not qualify for FMLA leave. (Id.)

Sedgwick issued letters dated September 21, 2007, informing the plaintiff that her

---

[1] I note parenthetically that the defendant's undisputed evidence shows that the plaintiff was, in fact, absent from work on the days covered by these requests for leave. (See Def.'s Index, filing 15, Ex. 1, Bates Aff. ¶¶ 30, 32.)

3

requests for FMLA leave for September 5-12 and 19-21 were approved. (Def.'s Facts ¶ 30.) The defendant received notice of Sedgwick's decisions and, being aware that the plaintiff had not worked sufficient hours to qualify for FMLA leave, asked Sedgwick to explain its approval of the plaintiff's requests. (Id. ¶ 31.) Sedgwick discovered that the approvals had been issued in error and "clarified" that the plaintiff's requests for FMLA leave would be denied. (Id.) Following this clarification, the defendant charged points against the plaintiff for her absences. (Id. ¶ 32.) With these charges, the plaintiff's rolling point total exceeded 6. (Id.)

On September 27, 2007, the defendant placed the plaintiff on suspension "pending further evaluation of her status under the Attendance Control Program." (Def.'s Facts ¶ 34.) At the conclusion of this evaluation, the defendant terminated the plaintiff's employment. (Id. ¶ 36.)

## II.  STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III. ANALYSIS

"Two types of claims exist under the FMLA: (1) 'interference' or '(a)(1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)-(2)). According to the parties' Rule 26(f) report, the plaintiff claims only that she was terminated in violation of the FMLA's prohibition against retaliation. (See filing 6, ¶ 1.) In other words, her claim is based on § 2615(a)(2). See Stallings, 447 F.3d at 1051 (noting that taking an adverse employment action based on an employee's use of FMLA leave is actionable under § 2615(a)(2)). The defendant submits that it is entitled to summary judgment on the plaintiff's claim. I agree.

The plaintiff has not come forward with direct evidence of intentional discrimination. Therefore, her claim must be analyzed using the McDonnell Douglas burden shifting framework. Stallings, 447 F.3d at 1051 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of FMLA retaliation. To do so, she "must show that she engaged in activity protected under the Act, that she suffered an adverse employment action by the employer, and that a causal connection existed between [her protected] action and the [employer's] adverse employment action." Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its challenged actions." Stallings, 447 F.3d at 1051. "The defendant's burden 'is not onerous and the showing need not be made by a preponderance of the evidence.'" Id. at 1051-52 (quoting Wallace v. Sparks Health Sys., 415 F.3d 853, 860 (8th Cir. 2005)). If the employer satisfies its burden, the plaintiff is "left with 'the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision.'" Id. at 1052 (quoting Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006)). The plaintiff may establish pretext "indirectly by showing that the employer's proffered explanation is unworthy of credence," or "directly by persuading the court that a prohibited reason more likely motivated the employer." Id. (citations omitted).

The defendant argues first that it is entitled to summary judgment because the plaintiff cannot establish a prima facie case of retaliation. (See filing 16 at 12-13.) More specifically, the defendant asserts that the plaintiff cannot show that she engaged in an activity protected under the FMLA. (Id. at 13.)

In order to demonstrate that she engaged in protected activity, the plaintiff "must show that she exercised rights afforded by the [FMLA]." Smith v. Allen Health Systems, Inc., 302 F.3d 827, 832 (8th Cir. 2002). An FMLA retaliation claim cannot be based on absences which do not qualify for FMLA leave. See, e.g., Hatchett v. Philander Smith College, 251 F.3d 670, 677 (8th Cir. 2001) (indicating that an employee failed to state a prima facie case of FMLA retaliation when she failed to demonstrate that she was entitled to FMLA leave); Brehmer v. Xcel Energy, Inc., Civ. No. 06-3294, 2008 WL 3166265, at *10 (D.Minn. August 4, 2008) ("Because Brehmer has failed to raise any genuine issue of fact that he was eligible to take FMLA leave . . . he cannot establish a prima facie claim that he engaged in protected activity that led to an improper retaliatory termination of his employment . . . ."); cf. Roche v. Saint Lukes Shawnee Mission Health Sys., 46 F. App'x 867 (8th Cir. 2002) (holding that district court did not err in dismissing FMLA claim when the plaintiff failed to demonstrate that she was entitled to FMLA protection). In order to be eligible for FMLA leave, an employee must have been employed "for at least 12 months by the employer" and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). See also Darby v. Bratch, 287 F.3d 673, 679 & n.9 (8th Cir. 2002). It is undisputed that, due to her failure to work the requisite number of hours, the plaintiff was not eligible for FMLA leave when she was absent from work on March 8-12, 2007, March 23-June 11, 2007, August 20-23, 2007, September 5-12, 2007, and September 19-21, 2007. Because the plaintiff has not shown that there is a genuine issue as to whether she was eligible for leave, she cannot establish that she engaged in a protected activity that led to her unlawful, retaliatory termination. Thus, an essential component of her prima facie case is unsatisfied, and the defendant is entitled to summary judgment on the plaintiff's claim.

Although the plaintiff does not dispute that she was ineligible for FMLA leave, she submits that the defendant must be equitably estopped from raising her ineligibility as a defense to her claims. (Filing 18 at 2.) More specifically, she argues that after her requests for FMLA

leave were mistakenly approved on September 21, 2007, she reasonably relied upon that approval to her detriment. (See id. at 2-3 (citing Duty v. Norton-Alcoa Proppants, 293 F.3d 481 (8th Cir. 2002); Gurley v. Ameriwood Industries, Inc., 232 F. Supp. 2d 969 (E.D. Mo. 2002)).)

"The principle of equitable estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-94 (8th Cir. 2002) (citations omitted). It is undisputed that on September 21, 2007, Sedgwick notified the plaintiff–erroneously–that her requests for FMLA leave for September 5-12, 2007, and September 19-21, 2007, were approved. The plaintiff stated in her deposition, however, that she did not rely on Sedwick's approval letters when she missed work on the dates in question. (See Def.'s Index, filing 15, Ex. 2, Garner Dep. at 38:12-22.) Indeed, Sedgwick's letters were issued after the plaintiff missed work on September 5-12 and 19-21. The facts of this case are clearly distinguishable from those of Duty and Gurley, wherein employees acted in the wake of their employers' misrepresentations. I therefore find that the defendant is not equitably estopped from arguing that the plaintiff was ineligible for FMLA leave.

I note in passing that the defendant has also come forward with a legitimate, nondiscriminatory reason for terminating the plaintiff. Specifically, the defendant argues that it reasonably relied on Sedgwick's determinations that the plaintiff was ineligible for FMLA leave, applied the attendance policy that covers all production employees at the Valley facility, and terminated the plaintiff in accordance with that policy. (See filing 16 at 19-20.) The plaintiff has not argued that the defendant's proffered reason is in fact a pretext for retaliation in violation of the FMLA. (See generally filing 18.) Therefore, even if I were to assume that the plaintiff can establish a prima facie case of discrimination, I would be required to grant the defendant's motion.

**IT IS ORDERED** that the defendant's motion for summary judgment, filing 14, is granted.

Dated October 6, 2008.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge